UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BIRGIT Y. PUTZ,<br><br>              Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>              Defendant. | CASE NO.    C08-5290RBL<br><br>REPORT AND RECOMMENDATION<br><br>Noted for January 23, 2009 |

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). This matter has been fully briefed.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Birgit Putz, was born in 1964. She has not been able to work since January 20, 1994. Plaintiff's medical problems seem to have started in July 1993, when she was diagnosed with mononucleosis.

Plaintiff filed an application for Social Security and SSI disability benefits on November 7, 2003, alleging that she has been disabled under the Social Security Act since February 26, 1996. Tr. 28, 38, 83, 352. For Ms. Putz to receive Social Security disability benefits, she must show that her disability began no later than her date last insured, December 31, 2001. Tr. 30. Her application was denied initially and on reconsideration. Tr. 28, 47-49, 53-54. Ms. Putz filed a hearing request, and a hearing was held before

an Administrative Law Judge ("ALJ"). Tr. 348-85. On July 26, 2007, the ALJ issued a decision in which he found that Ms. Putz was not disabled. Tr. 25-36.

When assessing whether an adult claimant is disabled and entitled to disability benefits, the ALJ uses a certain five-step evaluation process set forth in 20 C.F.R. § 404.900 and related regulations. Here, the ALJ followed the five-step process. The ALJ found that Ms. Putz's chronic fatigue was a severe impairment, but it did not meet or equal any listing. Tr. 30-32. The ALJ found that through her date last insured, Ms. Putz had the residual functional capacity to perform the full range of light work, with no climbing of ladders, ropes, or scaffolds, no exposure to heights or hazards, and only occasionally climbing stairs and balancing. Tr. 32. The ALJ found that Ms. Putz was able to perform her past relevant work as an administrative assistant and collection clerk, and that she was therefore not disabled. Tr. 35. Plaintiff requested review by the Appeals Council which, on March 26, 2008, denied her request for review, leaving the decision of the ALJ as the final decision of the Commissioner. Tr. 5-7.

Plaintiff now brings the instant action pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of the administration's final decision. Specifically, plaintiff argues the following errors:

1. the ALJ failed to properly evaluate and determine Plaintiff's disability onset date;

2. the ALJ improperly evaluated Plaintiff's Chronic Fatigue Syndrome;

3. the ALJ failed to properly evaluate the opinion of Plaintiff's treating and examining physicians;

4. the ALJ failed to properly evaluate the opinion of Plaintiff's treating naturopaths;

5. the ALJ failed to properly consider Plaintiff's testimony regarding her symptoms and limitations;

6. the ALJ failed to properly evaluate lay witness evidence;

7. the ALJ improperly determined Plaintiff's Residual Functional Capacity;

8. the ALJ erroneously found that Plaintiff can perform her past relevant work; and

9. the Commissioner failed to meet the burden of showing that Plaintiff can perform any work in the national economy.

After reviewing the record the undersigned finds the ALJ's decision is properly supported by substantial evidence and free of any legal error. The administrative decision should be affirmed.

## DISCUSSION

The Court must uphold the Secretary's decision if the ALJ applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Secretary's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

### A. *THE ALJ PROPERLY EVALUATED THE MEDICAL EVIDENCE DURING THE RELEVANT TIME PERIOD*

Plaintiff argues the ALJ failed to properly evaluate the medical opinion evidence from Dr. DeMaio, Dr. Hillson, Dr. Data, and Dr. Mason. The ALJ is entitled to resolve conflicts in the medical evidence. Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). He may not, however, substitute his own opinion for that of qualified medical experts. Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982). If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996). In Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of a treating physician's opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from the claimant that conflicted with the treating physician's opinion.

After reviewing the arguments and the record, the undersigned finds the ALJ's review, analysis of the medical evidence and related findings are properly supported by substantial evidence and free of legal error. The ALJ noted or summarized opinions from the following medical professionals in his opinion:

ORDER
Page - 3

Dr. Data, Dr. Plymate, Dr. DeMaio, Dr. Hillson, Dr. Gan, Dr. Quddusi, Dr. Zivin, and Dr. Poesnecker.

The ALJ concluded the following:

> Prior to the claimant's alleged onset date, December 1, 2001, she was diagnosed with chronic fatigue syndrome. After the claimant's alleged onset date and before her date of last insurance, December 31, 2001, there is no objective medical evidence to support this diagnosis. After the claimant's date of last insurance, only Katie Data, ND, has diagnosed the claimant with chronic fatigue.
>
> Giving the claimant the benefit of the doubt, despite the lack of objective medical evidence in December 2001, I find that the claimant has the medically determinable severe impairment of chronic fatigue syndrome.

Tr. 31.

Plaintiff argues the ALJ did not properly evaluate the opinions, however, after reviewing the record, the undersigned finds the ALJ's interpretation of the evidence was reasonable. For instance, in June 1996, Dr. DeMaio, an infectious disease specialist, diagnosed Plaintiff with chronic fatigue. Tr. 283-85. Dr. DeMaio reported normal laboratory findings. Despite the diagnosis, Dr. DeMaio wrote:

> The patient should be able to perform her job while receiving treatment. The patient is limited only by subjective feelings of fatigue. Experience indicates that a slow but steady return to work, initially with part-time hours then moving up towards full-time employment with flexibility in the patient's schedule and avoidance initially of high-stress situations, is most successful in enabling a patient to come back to full-time employment in the face of chronic fatigue syndrome. The patient's symptoms would be expected to slowly abate over the next several months to one year. The addition of antidepressants by be of some benefit.

Tr. 284. The ALJ reasonably interpreted Dr. DeMaio's opinion as noted above.

With regard to Dr. Data, the ALJ wrote the following in the context of Plaintiff's credibility:

> The claimant's allegations of disabling level symptoms prior to her date last insured are not consistent with the claimant's reports to her doctor. The claimant saw Sandra Gan, MD, a cardiologist, several times form 2000 until 2002. When she saw the claimant on May 30, 2002 the doctor noted that the claimant had last seen her on July 19, 2000 (B-8F3). The notes reflect that the claimant stated that she "had felt well until past 2-3 weeks" (B-F2). The time period the claimant is claiming she was disabled falls between the July 19, 2000 visit and the May 30, 2002 visit. However, there were no visits during the intervening time. Her statement to Dr. Gan that she had been feeling well until just a few weeks prior to her visit on May 30, 2002 does not support the claimant's alleged severe symptoms in December 2001.
>
> The claimant's treating naturopath, Katie Data, ND, diagnosed the claimant with chronic fatigue that she stated completely disabled the claimant. A naturopath is not an acceptable medical source, as defined by the Regulations, so I cannot use her diagnosis to establish a medical impairment. I may use evidence from a naturopath to show the severity of the claimant's impairments and how that severity affects the claimant's ability to work. 20 CFR §§ 404.15113(a) and (d). Dr. Data wrote a letter on September 12, 2003 regarding the claimant's application for disability benefits (B-3F-7). She stated that it was her opinion that the claimant had chronic fatigue syndrome (B-3F7). This letter was written

ORDER
Page - 4

almost two years after the claimant's alleged disability and does not set forth any medical basis for concluding the claimant was disabled. Thus, I give it limited weight. However, it does document, and I do take into consideration the fact that the claimant's physical examination before and after her date of last insured in December 2001 showed no abnormal findings.

On March 12, 2007, Dr. Data submitted a Chronic Fatigue Syndrome Residucal Functional Capacity Questionnaire to this agency. She reported that the claimant had chronic fatigue syndrome which resulted in her inability to work (B15F-1). She also stated that the claimant had elevated sedimentation rate and hypothyroid (B-15F1). She reported that the claimant was incapable of tolerating even "low stress" jobs based upon subjective complaints from the claimant (B15F-2). It appears that Dr. Data's opinion that the claimant cannot work relates to a period after the claimant's date last insured, and is largely based upon the claimant's subjective complaints. Moreover, Dr. Data's opinion is contravened by her own treating notes from February 16, 1999 and March 25, 2002, the two visits closest to the claimant's alleged disability in December 2001, that are not consistent with her finding that the claimant is incapable of working due to chronic fatigue without qualification. She strongly urged the claimant to seek therapy, eat nutritional foods, and get some exercise (B3F-17). Dr. Data's notes during these visits, the closest to the claimant's alleged onset date, do not support her March 2007 correspondence and finding of disability. Thus, I give the March 12, 2007 correspondence from Dr. Data no weight.

The claimant testified that she sought treatment by phone consultation from Gerald Poesnecker, DC, at the Healing Research Center in Pennsylvania. On March 4, 2002, he diagnosed the claimant with chronic fatigue syndrome (B-10F1). He found that "[o]n examination, it was found that her blood pressure was very low, the muscles in her limbs were painful to touch and her neck and shoulders were tense and painful" (B-10F1). The claimant reported that she was never physically examined by Dr. Poesnecker (B-6E8). His findings are obviously based upon the claimant's self report of her symptoms over the phone and thus are given no weight.

[Omitted]

While the claimant alleges that she was disabled and unable to work in December 2001, there is no objective medical evidence to support the severity of her symptoms. Since this time, the claimant has seen numerous physicians but none of them have given the claimant a firm diagnosis of chronic fatigue. The claimant is not taking any prescribed medication and is only receiving treatment from a naturopath. Further, the claimant did not receive any psychiatric treatment prior to her date last insured. While, the claimant states that this is because no one can give her anything that helps, there is no objective medical evidence to support a finding of disability.

Even giving the claimant the benefit of the doubt that she experiences chronic fatigue, in the relevant period prior to her date last insured she was able to perform light work as is listed above.

Tr. 33-35.

In sum, the undersigned finds no error in the ALJ's treatment and analysis of the medical evidence. Substantial evidence in the record supports the ALJ's decision. The ALJ's interpretation of the opinion evidence was reasonable and free of any legal error. The ALJ provided legitimate reasons to limit the opinion of Dr. Data that Plaintiff 's fatigue was more severe than he concluded, and necessarily

ORDER
Page - 5

intertwined with the ALJ's analysis of the medical evidence was his consideration of the Plaintiff's allegations and statements alleging complete disability. As further discussed below, the undersigned finds no error in the ALJ's treatment of Plaintiff's credibility and thus, the ALJ properly relied on this as an additional basis to rely on the medical evidence that supports his conclusion that Plaintiff's chronic fatigue does not cause limitations that would prevent her from working.

**B.    *THE ALJ PROPERLY EVALUATED PLAINTIFF'S CREDIBILITY AND THE LAY WITNESS EVIDENCE***

Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. Id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (*citation omitted*). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273,1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. Id. The ALJ must cite reasons germane to the witness in order to properly discredit lay witness testimony. Schneider v. Commissioner, 223 F.3d 968, 976 (9th Cir. 2003).

Without repeating the ALJ's analysis quoted above, the undersigned finds the ALJ properly

discredited Plaintiff's allegations of disability beyond the severity level determined. As noted above, the ALJ relied on the opinion of Dr. Gan, who reported Plaintiff was feeling well until just a few weeks prior to her visit in May 2002, and Dr. Data, who's January 1996 and April 2002 records indicated Plaintiff's physical abilities were normal at that time, to reject Plaintiff's allegations of greater severity during that relevant time period. The ALJ properly relied on this medical evidence to discredit the testimony.

Similarly, the ALJ properly rejected the lay evidence statements suggesting Plaintiff was unable to do any type of work. The ALJ addressed the lay evidence, stating:

> The claimant had two lay witness witnesses testify, Drena Putz and Louella Martin. Ms. Martin also submitted a third part report and letter (B-5E1, B-2E1). Louella Martin reported that "Birgit Putz is in my eyes a very sick person. She does nothing all day from the time she wakes up until she goes back to bed" (B-5E1). Ms. Drena Putz also submitted a letter and stated that she had watched her "sister's health deteriorate from a healthy active person to someone who looks like a semitruck hit her every morning" (B-2E4). Both essentially testified and reported that the claimant was in terrible shape. Their testimony was vague and their beliefs were largely based upon the claimant's subjective assertions. Additionally, their testimony is not supported by the record and not time specific. Thus, I give their testimony little weight.

Tr. 34. The ALJ relied on two main reasons to reject the lay testimony, his interpretation of the medical evidence (discussed above) and the timeliness of the evidence. As noted above, the ALJ properly gave more weight to the opinion evidence closest in time to the alleged onset date. Accordingly, the ALJ properly rejected or discounted the lay witness evidence.

## C. *THE ALJ PROPERLY EVALUATED PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY, CONCLUDING PLAINTIFF RETAINED THE ABILITY TO PERFORM PAST RELEVANT WORK*

"[R]esidual functional capacity" is "the maximum degree to which the individual retains the capacity for sustained performance of the physical- mental requirements of jobs." 20 C.F.R. § 404, Subpart P, App. 2 § 200.00(c) (emphasis added). In evaluating whether a claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's "ability to work on a sustained basis." 20 C.F.R. § 404.1512(a). The regulations further specify: "When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis." Id. at § 404.1545(b). If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. 20 CFR § § 404.1527, 416.927.

Plaintiff argues the ALJ's RFC finding is erroneous because he failed to properly evaluate the

medical evidence and lay witness evidence. As discussed above, the ALJ properly considered the medical and lay witness evidence. Likewise, the ALJ properly considered and discounted Plaintiff's testimony.

The ALJ found Plaintiff, during the relevant time period, was able to perform a full range of light work, generally requiring the ability to stand and/or walk for approximately six hours during a normal workday, occasional lifting of up to 20 pounds and frequent lifting of up to 10 pounds. The ALJ limited the RFC to occasional climbing of stairs, but never climbing ropes, ladders, or scaffolds, and no exposure to heights or hazards. Tr. 32. The physical evaluation completed by Dr. DeMaio and Dr. Data, as reasonably interpreted by the ALJ, support this finding. After reviewing the record and ALJ's RFC assessment, the undersigned finds no errors. The ALJ's RFC finding accurately reflects medical evidence relied upon by the ALJ.

## D. THE ALJ PROPERLY COMPLETED STEP-FOUR OF THE ADMINISTRATIVE PROCESS

The Ninth Circuit relatively recently wrote:

> At step four, claimants have the burden of showing that they can no longer perform their past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e); *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir.1990). Once they have shown this, the burden at step five shifts to the Secretary to show that, taking into account a claimant's age, education, and vocational background, she can perform any substantial gainful work in the national economy. 20 C.F.R. §§ 404.1520(f) and 416.920(f). *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir.2000). Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion. SSR 82-62. See 20 C.F.R. §§ 404.1571 and 416.971, 404.1574 and 416.974, 404.1565 and 416.965. [Footnote omitted]
> This is done by looking at the "residual functional capacity and the physical and mental demands" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e) The claimant must be able to perform:
> 1. The actual functional demands and job duties of a particular past relevant job; or
> 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-61. This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work. SSR 82- 62.

Pinto v. Massanari, 249 F.3d 840, 844-845 (9th Cir. 2001).

Here, Plaintiff described in sufficient detail her past employment. At the administrative hearing the vocational expert considered the testimony of the plaintiff. The vocational expert was asked by the ALJ whether Ms. Putz would be capable of performing her past relevant work, specifically referring to her work as a collections coordinator and administrative assistant. The vocational expert answered affirmatively. Tr. 35, 382-383. The court finds no error in the ALJ's assessment of plaintiff's past

relevant work and her ability to perform at that level during the relevant period.

## CONCLUSION

Based on the foregoing discussion, the Court should affirm the Administration's final decision denying plaintiff's application for social security disability benefits. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **January 23, 2009**, as noted in the caption.

DATED this 9th day of January, 2009.

*/s/ J. Kelley Arnold*
J. Kelley Arnold
U.S. Magistrate Judge